UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JERAL PEOPLES #253654,

        Plaintiff,                  Case No. 2:11-cv-203

v.                                         Honorable R. Allan Edgar

M. GRANT et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff Jeral Peoples leave to proceed *in forma pauperis*, and he has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Several of Plaintiff's claims stem from an incident occurring on February 20, 2011, at Marquette Branch Prison (MBP) in which Plaintiff sustained an injury to his finger. Plaintiff

alleges that he injured his finger in the prison yard during an altercation with other prisoners. When Plaintiff reported the injury, Nurse Jeff came to Plaintiff's prison cell and determined that Plaintiff had sustained a minor fracture in his finger. Thirty minutes later, Jeff provided Plaintiff with an ice pack and a dose of pain reliever. Plaintiff requested additional treatment for his injury, but his request was refused by the MBP health service.

On March 4, 2011, Plaintiff filed a Step I grievance complaining that his finger was swollen and painful and that he needed more thorough treatment of his finger, including an x-ray and a finger cast. Health Service Manager M. Grant responded to the Step I grievance noting that Plaintiff was seen by a nurse on March 15, 2011, and that x-rays had been ordered.[1] Plaintiff requested a Step II grievance review, but Grievance Coordinator Glenn Coron allegedly retaliated against Plaintiff by sending the grievance to the housing segregation unit on April 5, 2011, after Plaintiff had been released into the general population.

On or around March 21, 2011, Plaintiff received an x-ray of his finger. On or around March 24, 2011, Physician Assistant Joshua Kocua visited Plaintiff and evaluated his vital signs. Plaintiff indicated to Kocua that he "could not function [his] finger at all." (Compl. 3, docket #1, PageID#3.) Kocua told Plaintiff that his injury was a "minor fracture." (*Id.*) On April 18, 2011, Kocua conducted another vital-signs assessment and informed Plaintiff that the radiologist determined the x-ray to be "inconclusive to any type of diagnosis." (*Id.*) Plaintiff contends that he has lost some function in his finger.

---

[1] Plaintiff alleges that the response to the Step I grievance is fraudulent because it states that Plaintiff was injured on his left hand, though in fact he sustained the injury to his right finger. Plaintiff does not indicate how this false statement of fact is relevant to his claim.

Plaintiff also contends that officials improperly accused and found him guilty of a misconduct for his actions in the prison yard and placed him in segregation in retaliation for the injury that he sustained. Plaintiff claims that he is not guilty of the misconduct because he was not fighting with the other prisoners. Plaintiff alleges that a prison video shows that other prisoners "rushed at [him] for no reason at all." (*Id*.)

Finally, Plaintiff alleges that, on February 23, 2011, Sergeant Tasson damaged Plaintiff's $350 reading glasses.

Plaintiff sues Manager of Health Service M. Grant, Physician's Assistant Joshua Kocua, Unknown Party (a/k/a Nurse Jeff), Grievance Coordinator Glenn Coron, and Unknown Tasson (a/k/a Sergeant Tasson). Plaintiff seeks damages and an injunction requiring MBP officials to transport Plaintiff to Marquette General Hospital for proper medical treatment.

## Discussion

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment claim

Plaintiff claims that Defendants did not provide adequate medical care for his injured finger. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment, however. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or

> treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Plaintiff's case falls in the latter category. According to the complaint, Plaintiff received immediate and ongoing treatment and monitoring of his injury, including multiple visits by a nurse and a physician's assistant, as well as the use of a diagnostic x-ray to determine the seriousness of the injury. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Thus, under the facts alleged, Plaintiff has not stated a

cognizable claim based on deprivation of adequate medical care. S*ee Westlake*, 537 F.2d at 860 n.5.

### B. Retaliation claims

Plaintiff claims that Defendants retaliated against him by "using fraud in the misconduct," that Defendants placed him in segregation in retaliation for his injuries, and that Defendant Coron retaliated against him by sending the Step II grievance to the segregation housing unit rather than the unit housing the general population. (Compl. 3, docket #1, PageID#3.)

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory

allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support a conclusion that any of the Defendants' actions were retaliatory, or were motivated by protected conduct on the part of Plaintiff (sustaining an injury is not protected conduct). Accordingly, Plaintiff's speculative and conclusory allegations fail to state a claim.

### C. Due Process claim (misconduct conviction)

Plaintiff appears to claim that Defendants violated his rights to due process under the Fourteenth Amendment by falsely charging and convicting him of a misconduct for fighting in the prison yard. A prisoner's ability to challenge a prison misconduct conviction under the Due Process Clause depends on whether the conviction implicated any liberty interest. In the absence of a demonstrated liberty interest, a plaintiff has no due-process claim. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his misconduct conviction resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, the loss merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and major misconduct sanction

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

does not implicate the Fourteenth Amendment Due Process Clause"), adopted as judgment of court, Order of Jan. 4, 2011.

Even in the absence of a protectible liberty interest in the preservation of disciplinary credits, a prisoner may be able to raise a due-process challenge to a misconduct conviction that results in an atypical and significant deprivation. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995). Plaintiff, however, has not identified any significant deprivation or hardship arising from his conviction. Plaintiff alleges that he was placed in segregation, but segregation is an "atypical and significant" hardship only in extreme circumstances. *See Harden-Bey v. Rutter*, 524 F.3d 793, 795 (6th Cir. 2008). Generally, courts will consider the nature and duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship." *Id.* at 793.

Plaintiff offers no details of the conditions of his segregation, though the complaint suggests that it could not have lasted much longer than a month. Plaintiff was involved in the prison altercation on February 20, 2011, and he was released to the general prison population by April 5, 2011, the date on which he alleges that Defendant Coron erroneously sent the step II grievance to the administrative segregation unit. Absent other facts demonstrating hardship, a confinement to segregation for less than two months is not a deprivation sufficient to support a due-process claim. *See Sandin*, 115 U.S. at 486 (holding that disciplinary segregation for thirty days was not an atypical and significant deprivation); *Joseph v. Curtin*, No. 09-1616, 2010 WL 4903547, at *3 (6th Cir. Nov. 24, 2010) (holding that the prisoner failed to state a due-process claim where "nothing in [the plaintiff's] complaint suggested "there was anything 'atypical and significant' about [the plaintiff's] 61–day stay in administrative segregation."). Like the plaintiff's complaint in

*Joseph*, nothing in Plaintiff's complaint suggests there was anything atypical and significant about Plaintiff's stay in administrative segregation.

In sum, Plaintiff's due-process challenge to his misconduct conviction fails because it does not implicate a protectible liberty interest under the Due Process Clause of the Fourteenth Amendment. The misconduct conviction does not necessarily affect the duration of his sentence per the Sixth Circuit's reasoning in *Eby*, and there is no allegation that Plaintiff suffered a significant, atypical deprivation as a result of that conviction.

### D. Due Process claim (loss of property)

Finally, Plaintiff alleges that Defendant Tasson damaged Plaintiff's $350 glasses. To the extent Plaintiff claims that he was deprived of property without due process, this claim must fail because it is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 541. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 29, 2010). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff's claim must be dismissed because he fails to allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     6/21/2011                    */s/ R. Allan Edgar*
                                        R. Allan Edgar
                                        United States District Judge